**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:26-cv-01054-DOC-DFM                    Date:  June 2, 2026

Title: Cristian Lopez-Moreira v. Stremicks Heritage Foods, LLC et al

---

PRESENT:            THE HONORABLE DAVID O. CARTER, JUDGE

|  |  |
|---|---|
| Maria Barr for Karlen Dubon | Not Present |
| Courtroom Clerk | Court Reporter |
| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
| None Present | None Present |

---

**PROCEEDINGS (IN CHAMBERS):   ORDER REMANDING CASE TO STATE COURT SUA SPONTE**

On the Court's own motion, the Court hereby **REMANDS** this case to the Superior Court of California, County of Orange.

## I.      Background

This is an employment action. Plaintiff Cristian Lopez-Moreira ("Plaintiff") worked as an employee for Defendants Stremicks Heritage Foods, LLC ("SHF") and Kerry Doe ("Kerry") (collectively the "Defendants") in Orange County, California. Complaint ("Compl.") (Dkt. 1-2) ¶ 8.

During his employment, Plaintiff sustained several work-related injuries. *Id.* ¶ 10. On July 3, 2023, Plaintiff sustained a work-related injury to his right hand. *Id.* ¶ 11. Plaintiff sought treatment and following an MRI in August 2023, Plaintiff underwent surgery on this right thumb in October 2023. *Id.* ¶ 12. From August through October 2023, Plaintiff was placed under light duty restrictions and documentation was provided to Defendant. *Id.* Plaintiff alleges that during his restrictions, Kerry, Plaintiff's supervisor, repeatedly harassed Plaintiff, forcing him to work against his restrictions. *Id.* Plaintiff was placed on medical leave from the end of November 2023 through February 2024. *Id.* ¶¶ 14-15. Upon his return in February 2024, Plaintiff continued to require

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:26-cv-01054-DOC-DFM                                    Date: June 2, 2026
                                                                          Page 2

ongoing medical treatment from two different physicians. *Id.* ¶ 16. Due to the location of the two medical facilities, Plaintiff often spent entire days travelling to the facilities. *Id.* From February 2024 to February 2025, Plaintiff alleges that he began accumulating attendance "points" under Defendant's "point" system due to absences related to his ongoing treatment. *Id.* Plaintiff alleges that Defendant issued Plaintiff written warnings for various absences, including instances of calling out sick. *Id.* ¶ 18. Plaintiff alleges that Defendant continuously treated Plaintiff's medical-related absences as disciplinary violations. *Id.* ¶ 19.

On February 18, 2025, Kerry and Marta Elias from Human Resources informed Plaintiff that he had accumulated 12 points and was terminated. *Id.* ¶ 24. Plaintiff alleges he was terminated because of discrimination and retaliation for Plaintiff's disability/perceived disability, use of medical time off, requesting accommodations and engaging in protected activity and reporting and resisting illegal conduct. *Id.* ¶ 26.

Plaintiff alleges the following eight causes of action against Defendants and Does 1-20: (1) Discrimination in Violation of the Fair Employment and Housing Act ("FEHA"); (2) Harassment in Violation of FEHA; (3) Failure to Accommodate in Violation of FEHA; (4) Failure to Engage in the Interactive Process in Violation of FEHA; (5) Retaliation in Violation of FEHA; (6) Failure to Investigate and Prevent in Violation of FEHA; (7) Wrongful Termination in Violation of FEHA; and (8) Wrongful Termination in Violation of Public Policy. *See generally id.*

Plaintiff originally filed suit in the Superior Court of California, County of Orange, on July 16, 2025. Notice of Removal ("Not.") (Dkt. 1). On May 1, 2026, Defendant removed the action to this Court, asserting diversity jurisdiction. *See generally* Not.

## II.     Legal Standard

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Removal of a case from state court to federal court is governed by 28 U.S.C. § 1441, which provides in relevant part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. This statute "is strictly construed *against* removal jurisdiction," and the party seeking removal "bears the burden of establishing federal

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:26-cv-01054-DOC-DFM                                     Date: June 2, 2026
                                                                                    Page 3

jurisdiction." *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988) (emphasis added) (citations omitted).

Federal diversity jurisdiction requires that the parties be citizens of different states and that the amount in controversy exceed $75,000. 28 U.S.C. § 1332(a). For diversity jurisdiction purposes, a corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The presence of any single plaintiff from the same state as any single defendant destroys "complete diversity" and strips the federal courts of original jurisdiction over the matter. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005).

Generally, a removing defendant must prove by a preponderance of the evidence that the amount in controversy satisfies the jurisdictional threshold. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2008). If the complaint affirmatively alleges an amount in controversy greater than $75,000, the jurisdictional requirement is "presumptively satisfied." *Id.* In that situation, a plaintiff who then tries to defeat removal must prove to a "legal certainty" that a recovery of more than $75,000 is impossible. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *Crum v. Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000). This framework applies equally to situations where the complaint leaves the amount in controversy unclear or ambiguous. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996).

A removing defendant "may not meet [its] burden by simply reciting some 'magical incantation' to the effect that 'the matter in controversy exceeds the sum of [$75,000],' but instead, must set forth in the removal petition the underlying facts supporting its assertion that the amount in controversy exceeds [$75,000]." *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995) (quoting *Gaus*, 980 F.2d at 567). If the plaintiff has not clearly or unambiguously alleged $75,000 in its complaint or has affirmatively alleged an amount *less* than $75,000 in its complaint, the burden lies with the defendant to show by a preponderance of the evidence that the jurisdictional minimum is satisfied. *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010); *Guglielmino*, 506 F.3d at 699.

While the defendant must "set forth the *underlying facts* supporting its assertion that the amount in controversy exceeds the statutory minimum," the standard is not so taxing so as to require the defendant to "research, state, and *prove* the plaintiff's claims

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:26-cv-01054-DOC-DFM

Date: June 2, 2026
Page 4

for damages." *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) (emphases added). In short, the defendant must show that it is "more likely than not" that the amount in controversy exceeds the statutory minimum. *Id*. Summary judgment-type evidence may be used to substantiate this showing. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090–91 (9th Cir. 2003); *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). For example, defendants may make mathematical calculations using reasonable averages of hourly, monthly, and annual incomes of comparable employees when assessing the amount in controversy in a wrongful termination suit. *Coleman*, 730 F. Supp. 2d. at 1148–49.

If the court lacks subject matter jurisdiction, any action it takes is ultra vires and void. *See Gonzalez v. Crosby*, 545 U.S. 524, 534 (2005); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 101–02 (1998). The lack of subject matter jurisdiction may be raised at any time by either the parties or the court. Fed. R. Civ. P. 12(h)(3). If subject matter jurisdiction is found to be lacking, the court must dismiss the action, *id.*, or remand pursuant to 28 U.S.C. § 1447(c). A court may raise the question of subject matter jurisdiction *sua sponte*. *See Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002).

## III.   Discussion

Defendants argue that this Court has diversity jurisdiction in this action. Not. at 8. The Court disagrees.

Defendants have not met their burden to show that the amount in controversy requirement is satisfied. The Court only considers lost wages in the period from termination until removal. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018) ("the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court *may grant* on that complaint *if the plaintiff is victorious*") (emphasis added). Here, Plaintiff was terminated on February 18, 2025, Compl. ¶ 25, and the case was removed on May 1, 2026, *see generally* Not. At the time of Plaintiff's termination, he was paid $29.49 per hour, or $1,179.60 per week assuming a 40-hour work week. Not. at 10. Accordingly, Plaintiff's past economic damages at the time of removal are $73,642.43.[1] Plaintiff's lost wages of $73,642.43 do not reach the required $75,000 minimum.

Additionally, to reach the jurisdictional threshold, Defendants ask the Court to include the following speculative awards and fees. Defendants assert that by the time of

---

[1] $29.49/hour x 40 hours/week x  62.43 weeks = $73,642.43

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:26-cv-01054-DOC-DFM                                    Date: June 2, 2026
                                                                              Page 5

trial, Plaintiff's lost wages from additional back pay would total at least $127,396.80, and recovering front pay would increase this total by $122,678.40. Not. at 9-10. First, Defendants use a speculative time period of one year for calculating back pay and two years for calculating front pay. *See Traxler v. Multnomah Cnty.*, 596 F.3d 1007, 1011 (9th Cir. 2010) (recognizing that front pay is speculative). Second, Defendants offer no basis for calculating additional back pay and front pay during the same time period. *See Andrade v. Arby's Rest. Grp., Inc.*, 225 F. Supp. 3d 1115, 1140 (N.D. Cal. 2016) (finding it improper to award front pay while also awarding back pay for the same hours worked). Nonetheless, this Court only considers lost wages in the period from termination until removal. Therefore, the Court will not include the speculative additional back pay and front pay in the amount in controversy.

Defendants also assert that emotional distress damages, punitive damages, and attorneys' fees could or would likely exceed $75,000.00. Not. at 11-12. However, this Court does not include these types of speculative damages or civil penalties when calculating the amount in controversy. *See Traxler*, 596 F.3d at 1011; *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). Because Defendants have not satisfied their burden to show that more than $75,000 is at issue in this case, the Court lacks diversity jurisdiction.

The Court's decision not to include speculative awards in the amount in controversy is reinforced by the fact that Congress has not raised the amount in controversy since 1996—nearly three decades ago.[2] *See* The Federal Courts Improvement Act of 1996, 110 Stat. 3850. Since then, the inflation rate is nearly 100% (*i.e.*, prices have almost doubled). Thus, adjusted for inflation, the amount in controversy should be around $150,000. Stated conversely, a case worth $75,000 in 1996 is worth only $37,500 in today's dollars. Because inflation has plainly decreased the "real" value of the amount in controversy, more and more cases are able to meet the jurisdictional threshold and can be brought in federal court. As federal diversity jurisdiction expands, state court jurisdiction to decide purely state law issues and develop state law correspondingly decreases. Thus, the federal jurisdictional creep is incompatible with the most basic principles of federalism.

---

[2] For reference, in 1996, the minimum wage was $4.75 per hour, and only 16% of Americans had cell phones. Indeed, the current amount-in-controversy is older than both of my law clerks.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:26-cv-01054-DOC-DFM                                      Date: June 2, 2026
                                                                                            Page 6

Federalism is not the only loser in Congress's failure to increase the amount in controversy. When a case is improperly removed, as happened here, ultimate resolution is delayed. Moreover, if a court does not immediately remand a case sua sponte, a plaintiff may move to remand. Because cases subject to motion to remand are typically small dollar cases, this increased motion work can quickly cause attorneys' fees to outrun any potential recovery and places an immense burden on a plaintiff's lawyer working on contingency. In this respect, the current low jurisdictional threshold reduces access to justice. Therefore, the Court respectfully encourages Congress to reconsider the amount in controversy minimum.

## IV.    Disposition

For the reasons set forth above, the Court hereby **REMANDS** this case to the Superior Court of Orange County.

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                          Initials of Deputy Clerk: mba
CIVIL-GEN